UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RUTH NOHEMI REYES QUIROZ,

                Petitioner,

v.

KEVIN RAYCRAFT et al.,

                Respondents.

_____/

Case No. 1:26-cv-1871

Honorable Robert J. Jonker

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will conditionally grant the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## **Discussion**

### I.     **Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of her current detention and asks the Court to, *inter alia*, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.7.) In an order entered on June 17, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on June 23, 2026, (ECF No. 4), and Petitioner filed her reply the same day, (ECF No. 5).

## II.    Factual Background

Petitioner is a native and citizen of Honduras. (Pet., ECF No. 1, PageID1.) On January 11, 2025, Petitioner arrived at the Calexico West Port of Entry in California. (Notice to Appear (NTA), ECF No. 4-1, PageID.20; Form I-213, ECF No. 4-2, PageID.30.) At that time, the Department of Homeland Security (DHS) issued Petitioner a Form I-862, NTA, charging her with inadmissibility pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) for being "an immigrant who, at the time of application for admission, is not in possession of [valid immigration and travel documents]." (NTA, ECF No. 4-1, PageID.24.) DHS then paroled Petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5). (2026 Form I-213, ECF No. 4-2, PageID.30; Pet., ECF No. 1, PageID.3; Resp., ECF No. 4, PageID.14.) Petitioner requested asylum when she entered the United States on January 11, 2025, (*see* Form I-213, ECF No. 4-2, PageID.30), and Petitioner is currently working with an attorney to prepare and file her asylum application in Immigration Court. (Reply, ECF No. 5, PageID.38–39.)

On May 22, 2026, ICE agents arrested Petitioner on her way to work.[1] (Pet., ECF No. 1, PageID.4.) After her arrest, Petitioner was served with a document informing her that DHS was terminating her parole, retroactive to April 24, 2026. (Termination of Parole Letter, ECF No. 4-3, PageID.34.)  The letter explains that the parole is being terminated for several reasons:

> Neither humanitarian reasons nor public benefit warrant your continued parole. ICE has thoroughly reviewed the specific facts of your case and determined that discretionary parole is no longer warranted, and termination of parole is appropriate. Parole is being terminated because detention during the pendency of removal proceedings is appropriate pursuant to the Presidential Proclamation, Declaring a National Emergency at the Southern Border of the United States (Jan. 20, 2025) and the Presidential Proclamation, Securing Our Borders (Jan. 20, 2025).

---

[1] Respondents indicate that ICE encountered Petitioner while "in search of multiple aliens." (Form I-213, ECF No. 4-2, PageID.30.) Respondents do not argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), and there is nothing in the record presently before the Court to suggest that Petitioner was a law enforcement target for any reason other than her status as a noncitizen. (*See id.*)

> Further, after assessing the specific facts and circumstances of your case, it does not present compelling humanitarian reasons nor a public benefit to warrant your continued discretionary release on parole. Lastly, you failed to update your address with ICE and violated the registration requirements of the INA by failing to be in personal possession of your proof.

(*Id.*)

Petitioner was scheduled for an individual hearing before the Detroit Immigration Court on July 24, 2026.[2]

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

#### A.    Statutory Basis for Petitioner's Detention

Petitioner argues that her parole was improperly revoked because it was not made on an individualized case-by-case basis, as this Court has previously required.  (Reply, ECF No. 5, PageID.42.)   However, the document that terminated Petitioner's parole listed two separate violations of the terms of parole that were relied upon to justify its revocation.  (Termination of

---

[2] *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/ ("A-Number," enter "244886419," "Nationality," enter "Honduras,") (last visited July 22, 2026).  The Court has not received any additional information about the results of this hearing.

Parole Letter, ECF No. 4-3, PageID.34.)  Therefore, the Court rejects Petitioner's argument that no individualized determination to revoke parole was made in this case.

The Court also, however, rejects the Respondents' argument that Petitioner's detention is governed by § 1225 due to her manner of entry into the United States.  As the Sixth Circuit explained in *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026), the detention of a person like the petitioner—who previously entered the United States and has been residing within the interior of the country since entering—is governed by § 1226(a), not § 1225(b)(2)(A).

### B.    Fifth Amendment Due Process Considerations

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Lopez-Campos*, the Sixth Circuit Court of Appeals explained:

> Noncitizens who have "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903). Thus, noncitizens within the interior of the United States are entitled to the protections of the Due Process Clause, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993*); see also Demore v. Kim*, 538 U.S. 510, 523 (2003). Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." *Yamataya*, 189 U.S. at 100–01.

*Lopez-Campos*, 175 F.4th at 732. The Sixth Circuit therefore upheld the lower courts' determinations the government's detention of the *Lopez-Campos* petitioners "without bond under § 1226(a) was a deprivation of liberty that violated [their] due process rights." *Id*. at *13.

Petitioner is likewise detained under § 1226(a) and has been denied an individualized bond hearing. Therefore, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due

process rights. *See id.*; *see also Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *6–8 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *7–8 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *7–9 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *6–8 (W.D. Mich. Dec. 12, 2025).

## V.    Other Claims and Other Forms of Relief

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VI.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action. They seek the dismissal of the other named Respondent. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025). To ensure that this Court's orders regarding habeas relief will bind at least one Respondent with authority to act in the event that Petitioner is transferred outside the area under the authority of the ICE Detroit Field Office, the Court will retain all of the remaining Respondents.

## <u>Conclusion</u>

For the reasons discussed above, the Court will enter a judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Court will order

Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment with notice to the Parties as soon as practicable, no later than 24 hours prior to the scheduled hearing, or, in the alternative, immediately release Petitioner from custody.[3] The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was granted, the conditions of the bond, or if bond was denied, the reasons for the denial.

Dated:  August 4, 2026                          /s/ Robert J. Jonker
                                                Robert J. Jonker
                                                United States District Judge

---

[3] This Court has adopted a standard practice of requiring such a hearing within five business days, even if the Petitioner requests a deadline that is shorter or longer or only release.